UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| ERIC KOTY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 15 C 2600 |
| ) | |
| SHERIFF JOHN ZARUBA, ) | Judge Virginia M. Kendall |
| IN HIS OFFICIAL CAPACITY ) | |
| AS SHERIFF OF DUPAGE ) | |
| COUNTY, and DUPAGE COUNTY, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant, DuPage County Sheriff's Office, by its attorney, Robert Berlin, State's Attorney of DuPage County, through his Assistant, Gregory Vaci, hereby submits this memorandum of law in support of its motion for summary judgment.

**INTRODUCTION**

The remaining claim in Plaintiff's First Amended Complaint alleges retaliation in violation of the Americans with Disabilities Act ("ADA"). Defendant moves for summary judgment of Plaintiff's retaliation claim for the reasons set forth in this memorandum and its 56.1 Statement of Undisputed Facts.

**STATEMENT OF FACTS**

Plaintiff, Eric Koty ("Plaintiff"), brings this action under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA") (SOF ¶ 1)[1] Defendant, the DuPage

---

[1] SOF refers to a citation to Defendant's 56.1 Statement of Fact.

County Sheriff, ("Defendant") is an elected law enforcement officer in the County of DuPage and is the employer of Plaintiff for purposes of the ADA. (SOF ¶ 3) Plaintiff began his employment with Defendant on or about May 29, 2001. (SOF ¶ 4) Plaintiff was transferred from Corrections to the Law Enforcement Bureau in 2005. (Id.) In this case, Plaintiff alleges only that the Sheriff's Office retaliated against him for submitting a complaint with the Equal Employment Opportunity Commission ("EEOC") to the Sheriff's Office and not for any other activity taken by him. (SOF ¶ 7)

Plaintiff filed EEOC charge 440-2014-03506 on April 9, 2014 alleging discrimination in violation of the ADA. (SOF ¶ 9) Plaintiff filed EEOC charge number 440-2014-03506 (Amended) on April 28, 2014 alleging retaliation for filing EEOC charge 440-2014-03506. (SOF ¶ 8) With respect to this case, Plaintiff's claims of retaliation related only to his transfer to court security, his placement on inactive status in SWAT, his being required to devise a plan to store his weapons, his assignment to court security upon returning to work after his surgery, and being assigned to midnights after being transferred back to patrol. (SOF ¶ 10)

Plaintiff submitted a doctor's note on February 12, 2014, which stated that he was able to resume regular work on that day. (SOF ¶ 11) The note further stated that Plaintiff was able to perform all duties of a law enforcement official and that because of a hip condition a squad car with more legroom, like and SUV would be preferable. (Id.) Plaintiff admits that there was nothing contained in the February 12, 2014 letter that would have caused the employer to not allow Plaintiff to drive his current assigned vehicle. (SOF ¶ 12)

On April 7, 2014, Plaintiff submitted a doctor's note dated April 4, 2014 along with EEOC charge 440-2014-03506 to the Sheriff's Office. (SOF ¶ 13) The EEOC charge provided by Plaintiff had not been filed with the EEOC when it was submitted to the Sheriff's Office. (Id.) When Plaintiff went to the doctor on April 4, 2014 and received a doctor's note saying that he could no longer drive his assigned vehicle, it was apparent to him that it was possible that he would be transferred to court services. (SOF ¶ 14) The April 4, 2014 doctor's note obtained by Plaintiff stated that Plaintiff could resume work as of that day and that he could perform all of the duties of a law enforcement official. (SOF ¶ 15) The note also said that because of a hip condition, a squad car with more legroom, like an SUV, is necessary. (Id.) Plaintiff admitted that the April 4, 2014 doctor's note directed the Sheriff's Office not to allow him to use the vehicle that was currently assigned to him any longer. (SOF ¶ 16) The April 4, 2014 doctor's note was the only note received from Plaintiff's physician restricting him from driving his assigned vehicle. (SOF ¶ 17)

Prior to the April 4, 2014 doctor's note, Plaintiff's doctor only indicated that it was preferable that he drive a different vehicle. (SOF ¶ 18) Plaintiff never provided any follow up letter to the April 4, 2014 doctor's note that was more specific than requiring a squad car with more room, like an SUV. (Id.) Plaintiff did agree that continuing to drive his assigned vehicle would have violated the restrictions placed on him by his doctor on April 4, 2014. (SOF ¶ 19)

On April 8, 2014, Plaintiff received a letter authored by Chief Angus assigning Plaintiff to court security. (SOF ¶ 20) Angus' letter stated that the April 4, 2014 doctor's

3

note prevented Plaintiff from working in his current vehicle and that the employer had no vehicles conducive to the recommendation of his doctor. (Id.) Plaintiff was temporarily transferred to the court house pending the receipt of additional requested information regarding this matter. (Id.) The April 8, 2014 letter indicated that the transfer of Plaintiff to the courthouse was temporary and in fact the transfer was a temporary one. (SOF ¶ 21) Plaintiff admitted that by transferring him to the courthouse, the Sheriff's Office had complied with his doctor's note, even though it was not the solution that he preferred. (SOF ¶ 22) Plaintiff further admitted that his transfer to the courthouse was one of several accommodations that satisfied the restriction placed on him by the April 4, 2016 doctor's note. (Id.)

The decision to temporarily transfer Plaintiff to Court Services arrived at during a meeting between Chief Kruse, Chief Angus and Assistant State's Attorney Bruckner. (SOF ¶ 23) The meeting was convened either the day of, or the day after, Plaintiff submitted a doctor's note to the Sheriff's Office and was convened for the purpose of discussing that note. (SOF ¶ 24) During the meeting, it was contemplated that since the only restriction that was placed on Plaintiff by his doctor was that he could not operate his assigned vehicle, the options were either to transfer Plaintiff to the courthouse or send him home. (SOF ¶ 25) During the meeting, Chief Kruse consulted with ASA Bruckner, who had the idea of having Plaintiff work in the courthouse because he could do everything that a deputy could do except operate a specific vehicle. (SOF ¶ 26) Chief Angus decided that the appropriate thing to do was to transfer Plaintiff to the

4

courthouse so that he could continue working and because there was a need for more manpower in the courthouse. (Id.)

Subsequent to the assessment regarding the leg room of both vehicles Chief Kruse considered it irrelevant whether there were available Explorers since the vehicles had the same amount of leg room. (SOF ¶ 29) Chiefs Angus and Kruse were aware of those measurements when the decision was made to transfer Plaintiff to court services. (Id.) The fact that the employer had no vehicles conducive to the doctor's recommendation for more leg room was memorialized in the transfer letter to Plaintiff on April 8, 2014. (Id.) According to Chief Kruse, on April 7, 2014, the only options with respect to Plaintiff was to transfer him to the courthouse or tell him to stay home because he was unable to drive the vehicle that was assigned to him. (SOF ¶ 30)

Angus was involved in the decision-making process regarding Plaintiff's transfer to court services and in fact authored a memo temporarily transferring Plaintiff to a court house assignment until he was medically able to return to patrol. (SOF ¶ 31) Angus' opinion regarding Plaintiff's transfer was that he preferred to keep Plaintiff working somewhere in the office being productive rather than sitting at home because he could not drive his vehicle. (SOF ¶ 32) Since there was no vehicle available that had more leg room than his current vehicle, a temporary transfer to court services kept Plaintiff productive and working. (Id.) Giving Plaintiff the SUV used by the Sheriff's Office was not an option because it had less leg room and his doctor's note indicated that he needed more leg room. (SOF ¶ 33)

On April 8, 2014, Angus was in possession of a doctor's note submitted by Plaintiff dated April 4, 2014, which indicated that Plaintiff needed a vehicle with more leg room. (SOF ¶ 34) He was not aware of any other medical notes provided by Plaintiff giving any other medical direction other than he needed more leg room. (Id.)

The Sheriff has final say all transfers between bureaus. (SOF ¶ 35) Plaintiff's transfer was approved by the Sheriff after it was recommended by Kruse and Angus. (SOF ¶ 36) Plaintiff provides no evidence that would indicate that his transfer to the courthouse was in retaliation for submitting the EEOC charge on April 7, 2014, other than that the transfer took place the next day. (SOF ¶ 37)

Plaintiff claims that he was removed from the Special Operations unit ("SWAT") in retaliation for filing the same EEOC charge. (SOF ¶ 38) He alleges that he was not given a reason why he was placed on inactive status with SWAT on April 9, 2014. (Id.) Plaintiff was placed back on SWAT active status in September or October of 2014. (Id.)

Plaintiff also claims that he was required to have a security plan with respect to storing his weapons while he was at the courthouse working in retaliation for submitting the EEOC charge. (SOF ¶ 40) On August 14, 2014, Plaintiff received a memo from Chief Kruse wherein he requested from Plaintiff a proposal on how Plaintiff would store his weapons and equipment related to his assignment to the Special Operations unit. (SOF ¶ 41) Plaintiff responded in writing that he would be storing his weapons and gear in his personal vehicle and using that vehicle if he was called out. (SOF ¶ 42)

The issue was resolved by Plaintiff coming up with a plan to store his weapons in his personal vehicle and parking in the sally port of the courthouse. (SOF ¶ 43) On September 22, 2014, Chief Kruse responded with a memo wherein he outlined where Plaintiff would park and indicated that Plaintiff's weapons should be stored in his trunk or in a locked case concealed from view if his vehicle did not have a trunk. (SOF ¶ 44) This was one of four options provided by Plaintiff that was selected. (Id.)

Between the dates of February 19, 2015 and March 23, 2015, Plaintiff was unable to return to work due to the fact that he had restrictions that prevented him from being able to work full-duty as a deputy. (SOF ¶ 45) On March 23, 2015, Plaintiff returned to work in court services. (SOF ¶ 46)

On March 24, 2015, Plaintiff received a memo from Chief Kruse indicating that Plaintiff was being transferred to the Law Enforcement Bureau. (SOF ¶ 47) The transfer became effective a week after Plaintiff had been released for full duty. (Id.)

Plaintiff was told that he was assigned back to court services after he returned to work from medical leave because he was in court services when he went on leave so he had to return there and had to be on a transfer list to go to patrol. (SOF ¶ 48) After Plaintiff put in a transfer request he was transferred to patrol a week later. (Id.)

When Plaintiff returned to the Law Enforcement Bureau, he was initially assigned to the midnight shift on patrol. (SOF ¶ 49) Plaintiff was assigned to the day watch one month after his transfer back to the Law Enforcement Bureau. (Id.) Plaintiff testified that normally, if you are on any type of medical leave, you are not allowed to

bid on a shift and are assigned to wherever there is an open slot. (SOF ¶ 50) Plaintiff suffered no loss of pay when he was assigned to the midnight shift. (SOF ¶ 51)

Plaintiff was not assigned to court services long enough to affect his certification as a patrol officer. (SOF ¶ 52) Plaintiff was unaware of any patrol officer training that he missed as a result of being temporarily assigned to court services. (Id.)

Plaintiff admits that he has no proof that Sheriff Zaruba was personally involved in any of the decisions that Plaintiff claims were retaliatory actions taken by the employer. (SOF ¶ 53)

## STANDARD OF REVIEW

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 502 (7th Cir. 2004); Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999).

**Plaintiff fails to provide evidence that would allow him to avoid summary judgment on his claim of retaliation under the ADA**

Plaintiff's sole claim in this case is that Defendant retaliated against him because he presented an unfiled EEOC charge to the Sheriff's Office on April 7, 2014. (SOF ¶ 7) To make out a *prima facie* case for retaliation, an employee can proceed using either a direct or indirect method of proof. *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012). To establish a *prima facie* case using the direct method, a plaintiff has to "present evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two." *Id*.

The indirect method of proof has three steps. First, a plaintiff must establish a *prima facie* case of retaliation, which requires evidence that: (1) he engaged in protected conduct; (2) his job performance met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated individual who was not in the protected class was treated more favorably. *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012). Second, if a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Third, if the employer meets this burden, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual. *Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006).

Plaintiff has provided no evidence of more favorable treatment of similarly situated employees who did not engage in protected activity so it does not appear that Plaintiff intends to proceed under the indirect method of proof. Assuming that Plaintiff

9

is proceeding under the direct method, there is no dispute that Plaintiff's submission of an unfiled EEOC charge was statutorily protected activity. However, Defendant disputes that any "materially adverse" action was taken against Plaintiff and further that any causal connection existed between the submission of the EEOC charge and any of the actions that Plaintiff claims to be adverse.

**Plaintiff's temporary transfer to Court Services; placement on inactive status for special operations; requirement that he devise a plan to store his weapons; assignment to Court Services upon return to work; and his initial placement on the midnight shift when he returned to the patrol division are not materially adverse actions**

In this case, Plaintiff claims of retaliation relate to five actions taken by Defendant. (1) his transfer to court security, (2) his placement on inactive status in SWAT, (3) his being required to devise a plan to store his weapons, (4) his assignment to court security upon returning to work after his surgery, and (5) being assigned to midnights after being transferred back to patrol. (SOF ¶ 10) However, as a matter of law, none of the five actions that Plaintiff claims were retaliatory in nature are adverse employment actions for purposes of his retaliation claims. An adverse action in the context of a retaliation claim is "one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Roney v. Illinois Dep't of Trans.* 474 F.3d 455, 461 (7th Cir. 2007). The three general categories of actionable, materially adverse employment actions include: "(1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the

employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and his career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of his present job altered, changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment." *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009). There is no evidence in the record that any of the five actions that Plaintiff claims to be retaliatory fit into any of these three categories. In fact the evidence is strictly to the contrary. Initially, it is apparent that there is no evidence that the requirements set forth in *Nagle* applied to Plaintiff's temporary transfer to court services. It is undisputed that all deputies in both the law Enforcement and Court Services Bureaus are members in the same bargaining unit. (SOF ¶ 5) Plaintiff even agreed that he was not assigned to court services long enough to affect his certification as a patrol officer and he was unaware of any patrol officer training that he missed as a result of being temporarily assigned to court services. (SOF ¶ 52) Simply put, there is no evidence of diminished pay, reduced career prospects or a negatively altered workplace that could be considered adverse employment actions. Further, it is undisputed that the temporary transfer was an accommodation for Plaintiff's inability to drive in his assigned vehicle. Plaintiff admitted both that the April 4, 2014 doctor's note prohibited his using his assigned vehicle (SOF ¶ 16) and that his transfer to the court house was one of several accommodations that complied with the note. (SOF ¶ 22) For those reasons, it is clear

11

that the transfer was an accommodation for Plaintiff's situation and was not an adverse action.

With respect to being placed on inactive SWAT status, Plaintiff provides no evidence that the action fits into any of the categories set forth in *Nagle*. The same is true for Plaintiff's claims that he was required to have a weapon storage plan. Clearly, that decision had no negative effect on Plaintiff. The issue was resolved by Plaintiff coming up with a plan to store his weapons in his personal vehicle and parking in the sally port of the courthouse which was determined to be acceptable by Defendant. (SOF ¶¶ 43, 44) Plaintiff's return to court services after a short medical leave was also not an adverse action. On March 23, 2015, Plaintiff returned to work in court services. (SOF ¶ 46) On March 24, 2015, Chief Kruse transferred him to the Law Enforcement Bureau. (SOF ¶ 47) The transfer became effective approximately one week later. (Id.) Further, Plaintiff's return to the Law Enforcement Bureau to an open midnight shift was not an adverse action. Plaintiff was assigned to the day watch one month after his transfer back to the Law Enforcement Bureau. (SOF ¶ 49) Plaintiff admittedly suffered no loss of pay when he was assigned to the midnight shift. (SOF ¶ 51) As there is no evidence to establish that and adverse employment action was taken against Plaintiff, summary judgment in favor of Defendant is appropriate.

**Plaintiff cannot establish a *prima facie* case of retaliation because he cannot establish a causal relationship between his submission of the EEOC charge and any of the five claimed retaliatory acts**

Even if the foregoing five actions could be considered adverse employment actions that would support a claim of retaliation, Plaintiff cannot establish a *prima facie*

case of retaliation because he cannot establish a causal relationship between submitting the EEOC charge and any of the five actions. A plaintiff can use either direct or circumstantial evidence to meet his burden under the direct method. "[C]ircumstantial evidence of retaliation may include suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 307 (7th Cir. 2012) in the case at bar, Plaintiff admits that there is no evidence that would establish that his transfer to the courthouse was in retaliation for submitting the EEOC charge other than the transfer took place on the next day. (SOF ¶ 37) It is also undisputed that the April 4, 2014 doctor's note directed Defendant not to allow Plaintiff to continue to use his assigned vehicle as he required a vehicle with more legroom. (SOF ¶ 15, 16) Plaintiff agreed that allowing him to continue to drive his assigned vehicle would have violated the restrictions placed on him by his doctor in the note. (SOF ¶ 19) Plaintiff further admitted that by transferring him to the court house, Defendant was complying with the doctor's order even though it was not the solution that he preferred. (SOF ¶ 22) The undisputed facts establish that once in possession of the April 4, 2014 doctor's note, the decision makers for Defendant discussed how to proceed and determined that a temporary transfer to the court house was the best solution. (SOF ¶¶ 23-26; 30-32) The doctor's note was essentially a request for an accommodation that mandated action by Defendant in order to avoid violating Plaintiff's medical restriction. Defendant simply took the least drastic steps to avoid violating Plaintiff's restriction. Since the doctor's note and the EEOC charge were

13

submitted at the same time, and Plaintiff admitted that Defendant had to avoid violating Plaintiff's medical restriction; Defendant's actions in complying with the restrictions cannot be considered retaliatory. (See SOF ¶¶ 16, 19, 22) Ultimately, the circumstances related to the submission of the EEOC charge and the doctor's note simultaneously, negates any inference of causation resulting from the temporal proximity between the charge and the transfer.

Further, with respect to the other four actions that Plaintiff claims were retaliatory, he provides no evidence of causation. Of the remaining four claims, only one was close in time to submission of the EEOC charge. Plaintiff was placed on inactive status with SWAT on April 9, 2014. (SOF ¶¶ 38) However, Plaintiff again provides no evidence of causation other than temporal proximity. Prior to his return to SWAT, Plaintiff was required to come up with a weapons storage plan on August 14, 2014. (SOF ¶¶ 41) Plaintiff was returned to court services on March 23, 2015 after a medical leave beginning on February 19, 2015. (SOF ¶¶ 45, 46) Plaintiff was assigned to midnight shift upon return to the Law Enforcement Bureau approximately one week after he returned to work on March 23, 2015. (SOF ¶¶ 47) Plaintiff even agreed that normally, if you are on any type of medical leave, you are not allowed to bid on a shift and are assigned to wherever there is an open slot. (SOF ¶ 50)

The requirement to devise a weapons storage plan; the return to court services and the transfer to the midnight shift were not close in time to the submission of the EEOC charge. When analyzing retaliation claims, a "substantial time lapse . . . is counter-evidence of any causal connection." *Johnson v. Univ. of Wisc.*, 70 F.3d 469, 480

(7th Cir. 1995). The inference of causation weakens as the time between the protected expression and the adverse action increases, and then "additional proof of a causal nexus is necessary." *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir. 1998). Plaintiff provides no evidence of retaliation that would overcome the substantial lapse of time between submission of the EEOC charge and the claimed retaliatory actions.

As plaintiff cannot provide evidence of a causal relationship between submitting his EEOC charge on April 7, 2014 and any of the alleged retaliatory acts, summary judgment for Defendant is appropriate.

## **CONCLUSION**

For the reasons set forth in Defendant's Motion for Summary Judgment and this Memorandum of Law, Plaintiff's claim in his First Amended Complaint alleging retaliation under the ADA should be dismissed.

By: /S/ Gregory Vaci
#6204967
Assistant State's Attorney
503 N. County Farm Road
Wheaton, IL 60187
[630] 407 - 8221