UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

ERIC KOTY,                                      )
                                                )
                    Plaintiff,                  )
                                                )
v.                                              )      Case No. 15 C 2600
                                                )
SHERIFF JOHN ZARUBA,                            )      Judge Virginia M. Kendall
IN HIS OFFICIAL CAPACITY                        )
AS SHERIFF OF DUPAGE                            )
COUNTY, and DUPAGE COUNTY,                      )
                                                )
                    Defendants.                 )

# TAB 9

# Excerpts from Plaintiffs testimony before the Illinois Labor Relations Board

LABOR BOARD HEARING  9/9/2015

Page 1

STATE OF ILLINOIS

ILLINOIS LABOR RELATIONS BOARD

STATE PANEL

METROPOLITAN ALLIANCE OF          )

POLICE, DU PAGE COUNTY SHERIFF'S )

POLICE CHAPTER 126,                    )

    Charging Party,          )

    and                    ) No. S-CA-15-073

COUNTY OF DU PAGE AND SHERIFF OF )

DU PAGE COUNTY,                    )

    Respondent.              )

LABOR BOARD HEARING

HELD ON September 9, 2015

BEFORE:  ANNA HAMBURG-GAL, ALJ

Reported by Patricia A. Armstrong, CSR, RPR

[The Hearing commenced at 9:00 a.m.)

Page 2

INDEX OF WITNESSES AND EXAMINERS

| | PAGE |
|---|---|
| OPENING STATEMENT BY THE CHARGING PARTY | 9 |
| OPENING STATEMENT BY THE RESPONDENT | 161 |

| | PAGE |
|---|---|
| ERIC L. KOTY | |
| Direct examination by Mr. Garza.........15 | |
| Cross examination by Mr. Vaci..........101 | |
| Redirect examination by Mr. Garza......143 | |
| Rebuttal examination by Mr. Garza......236 | |
| | |
| JAMES KRUSE | |
| Direct examination by Mr. Bruckner.....166 | |
| Cross examination by Mr. Garza.........199 | |

    ---

Page 3

I-N-D-E-X  O-F  E-X-H-I-B-I-T-S

| | INTRODUCED | RECEIVED |
|---|---|---|
| Charging Party Exhibit No. 1 | 160 | 160 |
| Charging Party Exhibit No. 2 | 160 | 160 |
| Charging Party Exhibit No. 3 | 160 | 160 |
| | INTRODUCED | RECEIVED |
| Union Exhibit No. 1 | 160 | 160 |
| Union Exhibit No. 2 | 18 | 160 |
| Union Exhibit No. 3 | 160 | 160 |
| Union Exhibit No. 4 | 29 | 31 |
| Union Exhibit No. 5 | 33 | 34 |
| Union Exhibit No. 6 | 38 | 44 |
| Union Exhibit No. 7 | 44 | 45 |
| Union Exhibit No. 8 | 47 | 48 |
| Union Exhibit No. 9 | 55, 203 | 58 |
| Union Exhibit No. 10 | 58 | 59 |
| Union Exhibit No. 11 | 60, 102 | 63 |
| Union Exhibit No. 12 | 67, 223 | 160 |
| Union Exhibit No. 13 | 82, 198 | 82 |
| Union Exhibit No. 14 | 77, 216 | 81 |
| Union Exhibit No. 15 | 84 | 89 |
| Union Exhibit No. 16 | 89, 147 | 159 |
| Union Exhibit No. 17 | 93, 116 | 159 |
| Union Exhibit No. 18 | 133, 160 | N/A |

Page 4

I-N-D-E-X  O-F  E-X-H-I-B-I-T-S

| | INTRODUCED | RECEIVED |
|---|---|---|
| Respondent's Exhibit No. 1 | 170 | 171 |
| Respondent's Exhibit No. 2 | [Withdrawn.] | |
| Respondent's Exhibit No. 3 | 183 | 184 |
| Respondent's Exhibit No. 4 | 181, 210 | 183 |
| Respondent's Exhibit No. 5 | 178, 206 | 183 |
| Respondent's Exhibit No. 6 | [Withdrawn.] | |
| Respondent's Exhibit No. 7 | 184, 211 | 188 |
| Respondent's Exhibit No. 8 | 188 | 194 |
| Respondent's Exhibit No. 9 | 175, 189, 219 | 194 |
| Respondent's Exhibit No. 10 | 192 | 194 |
| Respondent's Exhibit No. 11 | 194 | 195 |
| Respondent's Exhibit No. 12 | 157 | 159 |

    ---

1 (Pages 1 to 4)

LABOR BOARD HEARING 9/9/2015

Page 97

you believe -- did you form a belief as to you going to patrol?

A. Yes.

Q. And when you received this November -- and that occurred prior to November 10th?

A. Yes.

Q. So you thought -- based on that, you thought what with regards to your position in Court Services?

A. That I was temporary.

Q. And then when you received the November 10, 2014, what did you think regarding your position in Court Services?

MR. VACI: Objection.

JUDGE HAMBURG-GAL: I think it's a fair question.

MR. VACI: Calls for a conclusion, what he thought when -- what he thought was -- and it's speculation, what he thought was going to happen.

JUDGE HAMBURG-GAL: I think that's a fair question. Overruled.

BY THE WITNESS:

A. There is a distinction, I think,

Page 98

between temporary and a permanent assignment. Most people who -- people who are permanently assigned there now, that is their assignment. Basically, I went from one day of training and a temporary position to now being told that I would have to go through the full FTO course and be permanently assigned there. So there was a distinction there.

And then I would have to be -- and in order to get out of there and get back to patrol --

MR. VACI: Objection; narrative.

JUDGE HAMBURG-GAL: If we could focus the inquiry, that would be helpful.

MR. GARZA: Okay.

BY MR. GARZA:

Q. Well, prior to November 10th, you testified that you hadn't received any notification or timetable as to when you were going to be in Court Services; is that correct?

A. That's correct.

Q. And in addition, you received requests to bid for Patrol Services; correct?

A. Correct. And I was put on patrol

Page 99

schedule for 2015.

Q. Then November 10, 2014, they received a to-from indicating you are going to be on patrol -- or strike that -- Court Services for seven months; correct?

A. Like I said, I think the intent was that I would have been there for seven months -- of the communication was that you have been here for seven months.

Q. Okay. So you -- but was it also your belief that you were going to be there on a permanent basis based on that November 10, 2014, letter?

A. As of November 10, yes.

Q. And eventually, did you get reassigned back to Patrol Services?

A. Yes, I did.

Q. When did you get reassigned back to Patrol Services?

A. I believe the date was, I was reassigned March 27th, and I think I started back patrol March 30th.

JUDGE HAMBURG-GAL: 2015?

THE WITNESS: 2015, yes.

Page 100

BY MR. GARZA:

Q. And were you -- and that was less than seven months?

A. From?

Q. From November 10th?

A. I believe so, yes.

Q. Do you know why you were put back to Court Services?

A. I was put back to Court Services because I went and had surgery done so that I could be medically cleared with no restrictions to come back to work.

Q. And you received no restrictions to come back to work?

A. Correct.

Q. In fact, you received no restrictions prior, too; isn't that correct?

A. Except for the vehicle, yes.

Q. Okay. So when you returned to work on March --

A. March 23rd was my return-to-work date.

Q. From that point on to current, have you worked in patrol?

25 (Pages 97 to 100)

Page 101

A.   No.  When I first came back, I was assigned in Court Services.  I was told that I would be put on the transfer list to return to patrol.

Q.   Okay.  And did you return to patrol?

A.   Yes, I did.

Q.   When did you return to patrol?

A.   March 30th.  I think it was a Monday.

Q.   And March 30th to current, did you serve in patrol?

A.   Yes, I have been in patrol since then.

Q.   And did you also serve in your SWAT function, as well, too?

A.   Yes.

Q.   Do you still have the same -- have you been assigned an SUV?

A.   No.

Q.   What kind of vehicle do you currently drive?

A.   A Crown Victoria.

Q.   Do you still currently -- strike that.

     You have not been assigned an SUV; is

Page 102

that correct?

A.   That's correct.

MR. GARZA:  I have nothing further.

JUDGE HAMBURG-GAL:  Okay.

     Cross-examination.

MR. VACI:  Thank you.

          CROSS-EXAMINATION

BY MR. VACI:

Q.   Deputy, you were reassigned back to patrol as soon as your doctor released you to drive your assigned vehicle; correct?

A.   No.

Q.   Well, you were put on the transfer list to go back to patrol?

A.   Correct.

Q.   And then a week later or so, you were returned to patrol?

A.   Correct.

Q.   At all times prior to that, going through 2014, your doctor said you could not drive a vehicle other than the Explorer -- strike that.

     You could not drive a Crown Victoria, you were restricted from driving a Crown Victoria?

A.   Not all of 2014, no.

Page 103

Q.   What period of time were you restricted from driving a Crown Victoria?

A.   I believe the way he termed it was necessary.  So that would have been the doctor's note from April 4th.

Q.   Well, if you look at Exhibit 11, that's the February 12, 2014; correct?  February 12, 2014, that's the one that you received that day; correct, that's a doctor's note?

A.   That's correct.

Q.   And in that one, it says -- the doctor says that you have a hip condition, looking at the last line, the main paragraph, and requests a squad car with more leg room, like an SUV, would be more -- or would be preferable; correct?

A.   That's correct.

Q.   So you weren't restricted from driving the Crown Victoria based on this note; correct?

A.   Correct.

Q.   And now if you look at 12, the next one, that's April 4, 2014, about two months later and it says, "However, because of a hip condition,

Page 104

a squad car with more leg room like an SUV is necessary; correct?

A.   That's correct.

Q.   So in this letter, your doctor was saying you could no longer drive the Crown Vic; correct?

A.   In his opinion, yes.

Q.   Okay.  In the doctor's opinion?

A.   Correct.

Q.   And this was something that your employer received; correct?

A.   That's correct.

Q.   And then within four days after receiving this doctor's note, four or five days, you were transferred to Court Services; is that correct?

A.   No.

Q.   When were you transferred to Court Services?

A.   The next day.

Q.   Well, this was April 4th.

A.   Oh, I -- yeah, I mean, they didn't have prior knowledge of this note until --

Q.   Okay.  But when you were transferred

Page 105

to Court Services, they did have this note?

A.   Correct.

Q.   And the transfer was based on the fact that you could not drive your assigned vehicle; correct?

MR. GARZA:  Objection; calls for speculation.

JUDGE HAMBURG-GAL:  Response.

MR. VACI:  I will withdraw that question.

JUDGE HAMBURG-GAL:  Okay.

BY MR. VACI:

Q.   You could not drive your assigned vehicle after April 4, 2014; otherwise, you would have been in violation of medical restrictions; correct?

A.   That's one way of looking at it, yes.

Q.   Okay.  How would that not be true?

A.   Could I still operate the vehicle? Yes, I could still operate the vehicle.

Q.   But looking at it from the Employer's perspective, now they have a note from your doctor saying that you can't drive your assigned vehicle?

A.   My assigned vehicle, correct.

Q.   Correct?

Page 106

A.   Yes.

Q.   So the choice would be either -- I mean, you desired to get an SUV; correct?

A.   I think it says "like an SUV," so a different vehicle.

Q.   And that was the accommodation, for lack of a better word, that you preferred; correct?

A.   I don't know, preference is really -- it's not -- there is not much choice.  There is only pretty much two vehicles which has been stated clearly that patrol uses.

Q.   You prefer getting a different vehicle as opposed to being transferred to Court Services; correct?

A.   Yeah, I would like to remain in patrol.

Q.   You would agree that the transfer to Court Services achieved the purpose of keeping you employed with the Sheriff's Office and not violating that restriction; correct?

A.   No.

Q.   It did not --

A.   There were other options available

Page 107

besides being transferred to Court Security.

Q.   Well, the two options were being transferred to Court Security and getting the SUV; correct?

A.   That's one way of looking at it, yes.

Q.   Were there any other options other than --

A.   They could have transferred me -- they could have put me in detectives --

JUDGE HAMBURG-GAL:  Please, one at a time so the court reporter can take it down.  You're both talking over each other.

THE WITNESS:  Okay.

BY MR. VACI:

Q.   Other than getting the SUV and being transferred to Court Services, were there other options that the Sheriff's Office had?

A.   Yes, there was.

Q.   What would that be?

A.   They could have temporarily put me into detectives.  They could have temporarily transferred me into the CRU unit.  There was other options that they had.

Q.   Those options, in your view, would

Page 108

have been more preferable than going to Court Services?

A.   Correct.  You still remain in LED and you are still doing basic functions of law enforcement.

Q.   And they would have been preferable to you?

A.   They would have been preferable to me.

Q.   Did you ever suggest those two options?

A.   I was never given a chance.

Q.   That's a "no"; correct?  You never did suggest those options?

A.   No one asked me.

Q.   Did you ever write a to-from memo to any supervisor or any chief saying that you would like that as an accommodation?

A.   No.

Q.   So having not raised that issue, it was either get the SUV or go into Court Services; correct?

A.   According to the Employer, yes.

Q.   And the basis that you believe that

27 (Pages 105 to 108)

Page 237

Q.   And what do you recall regarding his testimony with regard to that?

A.   I recall he testified that my response took six or seven months, I believe, is what he said.

Q.   And did your response take six or seven months?

A.   No, it did not.

Q.   When did you give him a response with regards to your plan to store the gear?

A.   The first time I responded was four days later in an e-mail to him. I got no response from him on that e-mail.

And then I believe it was approximately a month later, which would have been September 15th, we, myself and Patrick Burke, who is one of the vice presidents of the Union in the Courthouse sent another e-mail regarding the storage of my gear in my personal vehicle while I was at work.

I believe his note was August 14th, when he talked about getting the doctor's note from May 27, and being -- and how I needed -- what I need to do to be reactivated on the Special

Page 238

Operations Unit.

Q.   But prior to his note of August, you had made him known about a plan to store your gear?

A.   No, because I didn't know that I had to -- I didn't know that I needed a plan. The issue was never raised, they never -- since the 8th, when I was removed from the unit -- or the 9th, when I was removed from the unit, nobody said, well, you can't do this because you have nowhere to store your gear.

MR. GARZA:  I have nothing further.

JUDGE HAMBURG-GAL:  do you have anything further?

MR. VACI:  No. I have no further questions.

JUDGE HAMBURG-GAL:  Okay. Thank you very much.

Is there anything further that either party wishes to present?

MR. GARZA:  We have nothing.

MR. VACI:  I think all the exhibits have been either admitted or withdrawn.

JUDGE HAMBURG-GAL:  Okay. Briefs. Let's

Page 239

go off the record.

(WHEREUPON, discussion was had off the record.)

JUDGE HAMBURG-GAL:  Let's go back on the record.

Briefs are due on October 28, 2015. I would like an e-mail copy by close of business on that date and the hard copies should be postmarked October 28th. All right. The hearing is adjourned. Thank you.

MR. GARZA:  Thank you.

MR. BRUCKNER:  Thank you.

MR. VACI:  Thank you.

(WHEREUPON, the hearing was concluded at 2:53 p.m.)

Page 240

CERTIFICATE OF REPORTER

I, Patricia A. Armstrong, a Certified Shorthand Reporter and Registered Professional Reporter within and for the State of Illinois, do hereby certify that the witnesses, whose testimony appears in the foregoing hearing was duly sworn; that the testimony of said witnesses were taken on September 9, 2015, by me to the best of my ability and thereafter reduced to typewriting under my direction; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties thereto, nor financially or otherwise interested in the outcome of the action.

_____
Patricia A. Armstrong, CSR-RPR
Illinois License No. 084-001766

60 (Pages 237 to 240)