UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

ERIC KOTY,                                    )
                                              )
                    Plaintiff,                )
                                              )
v.                                            )    Case No. 15 C 2600
                                              )
SHERIFF JOHN ZARUBA,                          )
AS SHERIFF OF DUPAGE                          )
COUNTY, and DUPAGE COUNTY,                    )    Judge Virginia M. Kendall
                                              )
                    Defendant.                )

# TAB  12

# Excerpts from the deposition of Chris Johnson

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIC KOTY,                          )
                                    )
            Plaintiff;              )
                                    )
    vs.                             )    2015 C 2600
                                    )
SHERIFF JOHN ZARUBA,                )
Individually and In His             )
Official Capacity as Sheriff        )
of  DuPage County; and DU           )
PAGE COUNTY,                        )
                                    )
                                    )
            Defendants.             )

THE DEPOSITION OF
CHRISTOPHER JOHNSON
October 25, 2016
Two o'clock P.M.
            Called as a witness by the Plaintiff
herein, pursuant to the provisions of the Federal
Rules of Civil Procedure pertaining to the taking of
depositions for the purpose of discovery, before
MARLANE K. MARSHALL, C.S.R., License #084-001134, a
Notary Public qualified and commissioned for the
State of Illinois, taken at 430 West Roosevelt Road,
Wheaton, Illinois.

Christopher Johnson
October 25, 2016

2

PRESENT:

       MR. JEFFREY M. JACOBSON

       430 West Roosevelt Road

       Wheaton, Illinois  60187,

         appeared on behalf of the Plaintiff;


       OFFICE OF ROBERT B. BERLIN, by

       MR. GREGORY VACI

       503 North County Farm Road

       Wheaton, Illinois  60187,

         appeared on behalf of the Defendant.


       MS. LISA L. CLAY

       345 North Canal Street

       Suite C202

       Chicago, Illinois  60606,

         appeared on behalf of the Witness.



ALSO PRESENT:

       MR. ERIC KOTY

Christopher Johnson
October 25, 2016

3

I N D E X

WITNESS:   CHRISTOPHER JOHNSON

Page No.

Examination By:   Mr. Jacobson            4

Mr. Vaci             31

Mr. Jacobson            47

E X H I B I T S

Page No.

Exhibit No. 1                          17

Christopher Johnson
October 25, 2016

4

(Whereupon the witness was duly sworn

by the Notary.)


C H R I S T O P H E R   J O H N S O N,

a witness herein, called by the Plaintiff herein,

pursuant to the provisions of the Federal Rules of

Civil Procedure pertaining hereto, having been first

duly sworn, was examined and testified as follows:

E X A M I N A T I O N

BY:  Mr. Jacobson

Q    Would you please state your name for the

record?

A    **Christopher Johnson.**

Q    Mr. Johnson, this is an evidentiary

deposition taken pursuant to the United States

Supreme Court local rules, federal rules.  Where

do you currently work?

A    **Kane County Sheriff's Office.**

Q    And you used to work for the DuPage

County Sheriff.  Right?

A    **Yes.**

Q    What was your position there?

A    **When I started in 2005 I was a booking**

**officer.**

Christopher Johnson
October 25, 2016

30

just had the deputies' names on it and their car number. And then we had another board that would say, you know, if the car was at the third party vendor and when it was expected to be returned. So that way we can kind of -- I could kind of preplan, okay, if I am going to -- if the third party company is telling me this date, try to match it up with the deputy whenever they're working, check with the garage to make sure that's it's okay with them as well. Unfortunately, you know, I guess the way I wanted to do this whole thing didn't work out because there's so many -- there was just so many checks and balances.

Q    And politics I am sure. Mr. Koty had a hip problem.

A    Okay.

Q    An impingement. Did you know about that when you were there?

A    No.

Q    Okay. Did you ever socialize with Mr. Koty while you were there?

A    A couple times and then the car ride.

MR. JACOBSON:  I don't have anything further.

MR. VACI:  I may ask a few questions. Okay?

31

EXAMINATION

BY: Mr. Vaci

Q    Can you tell me again when you stopped being a quartermaster?

A    September --

MR. JACOBSON:  18th, 2015?

MR. VACI:  Put him under oath.

THE WITNESS:  September 15th.  I think it was a Friday.

BY MR. VACI:

Q    September 15th of what?

A    2015.

Q    Okay.  And was that your last position with the sheriff's office?

A    It was, yes.

Q    Okay.  And when did you start being the quartermaster to the best of your recollection?

A    Now that you have got that letter probably somewhere around 2014.  After the old quartermaster got sick and ended up leaving I was put in that position.

Q    You don't remember the date?

A    No.  It happened in twenty -- it had to be 2014 if he was still writing letters.

Christopher Johnson
October 25, 2016

32

Q    Is there any way or is there anything about these letters that would be able to help you to narrow it down to a month in 2014?

A    **You would have to find a letter that I wrote in 2014.  I don't know who I gave --**

Q    Okay.  So the answer to that then would be no?

A    **No.**

Q    Okay.  Do you have any idea if it was early in the year or late in the year that you started being quartermaster based on the season or anything else?

A    **It was probably -- maybe early spring.**

Q    Spring of 2014?

A    **'14, yeah.**

Q    Okay.  So this one -- this letter that is Bates stamped 903, it's from Zemaitis and it's dated February 3rd with that scratched out and then in writing is 26, 2014, he still would have been the quartermaster at that time obviously.  Right?

A    **Yes.**

Q    And there is nothing about this letter that would indicate to you when you took over as

Christopher Johnson
October 25, 2016

33

quartermaster?

A     Can I see the letter again?

Q     Yeah.  Do you have it?  903.

MR. JACOBSON:  Yes.  Oh, this is it.  Can I get a copy of when he got transferred to quartermaster or assigned?

MR. VACI:  I am sure there's a thing, yeah.

THE WITNESS:  Yeah, I don't --

BY MR. VACI:

Q     No?

A     I don't know.

Q     Do you recall the first time you knew there was an issue regarding Deputy Koty and the SUV for lack of a better expression?

A     When I was taking the position over.

Q     Okay.  So would you --  Would it be accurate to say that on the day you took the position over you were aware of that issue?

A     Sure, yes.

Q     And how did you --  To the best of your recollection how do you recall --  Strike that.

        Do you recall how you found out about that issue?

A     I do not recall, no.

Christopher Johnson
October 25, 2016

34

Q    Did the old quartermaster say anything to you?

A    I would assume.

Q    Okay.  And that would have been Zemaitis?

A    Correct.

Q    Do you remember what he would have told you?

A    No, I do not.

Q    Okay.  Now, you said you had -- at some point you had a conversation with the sheriff himself.  Correct?

A    Conversation regarding?

Q    Regarding Deputy Koty.

A    I told him I wanted to try to give Deputy Koty a car.

Q    Okay.  And this was in a telephone conversation?

A    It was face to face.

Q    Face to face.  Did you go see the sheriff or was this a chance meeting?

A    Probably just like hey, we're in the same spot together.

Q    Do you remember what day that was?

A    I have no idea at all, no.

Christopher Johnson
October 25, 2016

40

services do you remember knowing that at the time?

A     Yeah.  They decided to take him to go get a car.  He was going to the courthouse.  And I didn't ask questions.  The only question I had is why me.

Q     Okay.

A     But at that time you were performing that task because he had been transferred to the court-house.  Is that your recollection?

A     Yes.

Q     Do you remember how far before --  Strike that.

If that was April 8th, 2014 does that refresh your recollection at all regarding when you had that conversation with the sheriff?

A     No, it doesn't.

Q     Okay.  Do you have any recollection of -- Strike that.

The conversation that you had with the sheriff was prior to April 8th, 2014.  Correct?

A     I don't recall.

Q     Deputy Koty you knew was transferred to the courthouse on April 8th, 2014.  Correct?

A     Yes, I know now.

Christopher Johnson
October 25, 2016

41

Q    Okay.  Would you have --  Once you knew that Deputy Koty was being transferred to the courthouse you wouldn't have gone to the sheriff and said I have an SUV for him, would you have?

MR. JACOBSON:  Objection, speculation.

THE WITNESS:  Does that mean I can answer?

MS. CLAY:  Yes.

THE WITNESS:  Okay.  I am sure I would have had that conversation with him earlier like when I got the position because personally I didn't see what the problem was.

BY MR. VACI:

Q    Okay.  So when he got transferred to the courthouse on April 8th, 2014 did you have that conversation with the sheriff on April 7th, 2014?

A    **I don't recall.**

Q    Is it possible the day before he got transferred?

A    **If I was there April 7th, 2014 yeah, it's possible.**

Q    Okay.  Well, you know the day you drove him to get his car.  Correct?

A    **I do now, yes.**

Q    Okay.  If that was April 8th, 2014 did

Christopher Johnson
October 25, 2016

42

you have that conversation with the sheriff that day?

A    No.  The only conversation I had with the sheriff is why am I taking the deputy to go get his car.

Q    Did you have that conversation with the sheriff that day?

A    I believe I did, yeah.

Q    Okay.  And there was nothing said about getting him a car -- getting him an SUV on that day. Correct?

A    Not that I can recall, no.

Q    What about the day before?

A    I cannot recall.

Q    Do you specifically recall having the conversation the day before or not having the conversation?  Strike that.

Do you have any recollection of on April 7th, 2014 if you had that conversation with the sheriff --

A    Here's the --

Q    Let me finish the question.  -- wherein the sheriff told you not to give Deputy Koty an SUV?

Christopher Johnson
October 25, 2016

43

**A      I do not recall any date that I had with the sheriff when he told me not to give Deputy Koty an SUV.  I know it happened.  I couldn't tell you the date or time.**

Q     Do you have any recollection of whether it was on April 7th, 2014?

MR. JACOBSON:  Objection, asked and answered.

THE WITNESS:  I don't recall.

BY MR. VACI:

Q     Do you have any recollection whether it would have been within a week of you driving Deputy Koty on April 8th, 2014 to get his vehicle?

**A      It could have been.  I don't recall.  I don't know.**

Q     But you know it wasn't that same day, April 8th.

**A      No, it wasn't the same day.**

Q     And you have no recollection of whether it was the day before?

MR. JACOBSON:  Objection, asked and answered. You'll have to pay for the transcript if you keep doing this.

BY MR. VACI:

Q     Do you have any recollection?

Christopher Johnson
October 25, 2016

44

A     No.

Q     You don't know the date that the sheriff said that to you?

MR. JACOBSON:  Objection, asked and answered.

BY MR. VACI:

Q     Correct?

A     No, I do not.

Q     And there is nothing that would refresh your recollection as to what date you had that conversation with the sheriff?

A     No, there is nothing.

Q     No piece of paper, no e-mail, no memorandum of any kind?

A     No, because it was a face to face.  I just don't know what day, what time.

Q     Okay.  Well, when you had that conversation did you memorialize it in any way?

A     Meaning?

Q     Did you '-- When you had that conversation with the sheriff where he told you no to giving Deputy Koty an SUV did you memorialize that in an e-mail, a letter, did you tell anybody?

A     I might have told my chief.  I don't know if I put it on a piece of paper or something.

Christopher Johnson
October 25, 2016

45

I kind of --  You know, when the sheriff tells you not to do something I didn't ask.

Q    Who was your chief?

A    At that time it was Chief Kruse.

Q    And you would have told him what, that the sheriff told you not to give him the vehicle?

A    I probably would have said I can't give him a car right now.

Q    All right.  And also there is nothing that you can think of that would refresh your recollection as to the date that that conversation occurred?

A    Not a single thing.  Not that I can think of, no.

Q    Okay.

A    I mean if there is something I could see -- Like I said, I tried to -- I tried to put that place out of my memory.

Q    Okay.  Now, you said that transfers -- you believe transfers to court services are a punishment assignment?

A    Yes, I do.

Q    In every case?  Have you --  Strike that.

In your recollection is there anyone who

Christopher Johnson
October 25, 2016

46

was transferred from patrol to court services where it was not a punishment assignment?

A    Not that I can recall, no.  I don't know who would want to go to the courthouse from patrol.

Q    And how many people do you know who were transferred to court services from patrol?

A    Transferred from patrol to court services?

Q    Right.

A    I know of one, Deputy Koty.  But I don't know --  Like again I don't know who would want to voluntarily leave patrol to go to the courthouse.

Q    But there could be other reasons why people are transferred to court services.  Correct?

MR. JACOBSON:  Objection, speculative.

THE WITNESS:  Sure.  Yes.

BY MR. VACI:

Q    Medical reasons.  Correct?

A    That I don't know.

MR. VACI:  That's all I have.

MR. JACOBSON:  I have a couple follow-up questions.

County Court Reporters, Inc.
630.653.1622

Christopher Johnson
October 25, 2016

49

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF C O O K )


    I, MARLANE K. MARSHALL, C.S.R., a Notary Public in and for the County of Cook, State of Illinois do hereby certify that CHRISTOPHER JOHNSON was first duly sworn by me to testify the truth; that the above deposition was recorded stenographically and reduced to typewriting by me; that the deposition is a true, correct and complete transcript of the entire testimony given by the said witness at the time and place hereinabove set forth, and that signature is hereby waived by said witness.

    I further certify that I am not counsel for nor in any way related to any of the parties to this suit, nor am I in any way interested in the outcome thereof.

    In witness hereof, I have hereunto set my hand this 9th day of November, A.D., 2016.




                              _Marlane K. Marshall_
                              MARLANE K. MARSHALL
                              CSR License #084-001134