IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC KOTY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | No:  15 C 2600 |
| | ) | Judge Virginia M. Kendall |
| SHERIFF JOHN ZARUBA et al., | ) | |
|     Defendants. | ) | |

PLAINTIFF'S SUPPORTING MEMORANDUM OF LAW

NOW COMES Plaintiff, Eric Koty, by his attorney, Jeffrey M. Jacobson, and submits his Supporting Memorandum of law pursuant to Local Rule 56.1(b) as follows:

INTRODUCTION

Eric Koty (Koty) had complained about the employer's failure to address his disability and his need for an SUV with a seat that is higher than the brake and gas pedals. Koty not only liked driving on the street with the threats all around him, but he was on the Sheriff's Special Operations team. He was one of 22 officers, both County and local law enforcement that charge ahead in the worst conditions such as hostage situations, terrorist incidents, high risk arrest warrants and civil disasters, among others. (PSOF 44[1].)

Instead of assigning Koty an SUV, he was transferred to the court house. This case is about why would a rational human want to be driving around on the streets, arresting criminals that want to kill him when he could be sitting in the court house. It is because Koty chose to put his life on the line for us. The transfer to the court house was a punishment for Koty and the defendants knew he wanted to be a police officer.

---

[1] DSOF refers to Defendants' Statement Of Facts. PSOF refers to Plaintiff's Statement Of Facts.

ARGUMENT

The two elements of retaliation are 1. Was there a protected activity, and 2. Was there an adverse action. Defendants' motion for summary judgment is based on the indirect and direct arguments. This law has been abolished in *Ortiz v. Werner Enters., Inc.,* No. 15-2574, 9 (7th Cir. Aug. 19, 2016). The standard set forth in Ortiz is simply what would a reasonable juror infer? *Ortiz v. Werner Enters., Inc.,* No. 15-2574, 11 (7th Cir. Aug. 19, 2016). Based on Ortiz, the defendants' Summary Judgment motion should be stricken for failure to comply with law.

Even if this court finds that the defendant's legal theory is sound, there is clearly a question of material fact as to whether the employer retaliated by taking Deputy Koty off the street.

Defendants admit that there was a protected activity. On April 7, 2014, Koty notified them that they were discriminating against him because of his disability when he handed them his IDHR/EEOC complaint. DSOF 13. Defendants agree that Koty had submitted an EEOC/IDHR charge form.

The ADA prohibits employers from retaliating against an employee who asserts his rights under the Act. See Taylor-Novotny v. Health All. Med. Plans, Inc., 772 F.3d 478, 494 (7th Cir. 2014); 42 U.S.C. § 12203(a).

In other words, "[e]mployers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless." *Povey v. City of Jeffersonville, Ind.,* 697 F.3d 619, 624 (7th Cir. 2012) (citation omitted). To establish an ADA retaliation claim, a plaintiff must show:

> 1. that he engaged in a statutorily protected activity. See *Taylor-Novotny*, 772 F.3d at 494.

2. Statutorily protected activities include requesting ADA accommodations or complaining about disability discrimination. See id. at 494-95; *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814-15 (7th Cir. 2015).

When Koty notified the employer on April 7, 2014, that he had a disability and they were not accommodating it, he had engaged in a protected act. On April 7, 2016, he submitted his ADA complaint to his employer which was filed. Therefore, on April 7, 2016, Koty had met the first prong of the requirement for retaliation.

II.   Adverse action

a.  Pursuant to 42 U.S. Code § 12203
(a)Retaliation
No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation
It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

The determination of whether an employee was retaliated because he engaged in protective activity is up to jury. *Gracia v. SigmaTron International, Inc*, 2016 WL 6958643

Despite Defendants receiving a document on April 7, 2014 from Koty that the employer was not accommodating him, they did not allow an interactive process. (PSOF 15.) They never talked to him about the accommodation.  Pursuant to ADAAA, the employer is to have an interactive process. "[T]he ADA requires employers to engage in an interactive process with disabled employees needing accommodation so that together they can identify the employee's needs and discuss accommodation options.")." *Ammons v.*

*Aramark Uniform Services, Inc*, 368 F.3d 809, 819 (7th Cir. 2004) They did not make even an attempt to communicate with Koty.

Three witnesses admit that Koty's transfer to the court services from Law Enforcement is a punishment. They are a current employee in management. Lieutenant Daniel Bilodeau, who also was a past chief of the DuPage Sheriff's. (PSOF 3.) He testified that being assigned to court services from Law Enforcement is a punishment. (PSOF 3.) In addition, the quartermaster, Christopher Johnson also testified that being transferred from Law Enforcement to Court Security is a punishment. (PSOF 11.) He was the quartermaster at the relevant times that was responsible for assigning vehicles to deputies, among other things. (PSOF 6.) He testified that being moved from Law Enforcement to Court Services was a punishment. (PSOF 11.) Koty states that the Sheriff transferred him to Court Services from Law Enforcement to punish him for his IDHR and EEOC complaint. (PSOF 12.) All testified that the role of being on the street, making DuPage County safer is a much different job than being in the court house. (PSOF 5 and 11.)

Just recently, the Sheriff also documented that Court Services is inferior to Law Enforcement. The Sheriff tendered a document to the Union demanding that all of the Court Services employees that are replaced, be paid a range from $17.67 to 25.25 per hour. (Plaintiff's exhibit C, Appendix A, pg 19.) Currently, a Deputy Sheriff makes from $53,858 for no years of experience to $89,508 as a detective with more than 17 years of experience. Plaintiff's exhibit C, appendix A, pg 17. Clearly this shows that working in the court house is not the same as a police officer on the street. This document by the defendants states that the Court Security Officers shall be as provided in 55 ILCS 5/3-6012.1. (Plaintiff's exhibit C, pg 2, Section 1.1.)

What is different about Koty's job of Law Enforcement and Special operations compared to Court Services? As Lieutenant Bilodeau testified, there is a difference between being a police officer on the street and monitoring the halls of the court house. (PSOF 5.) Koty had a schedule that was better for him in Law Enforcement Bureau. The days and hours worked for Court Services versus Law Enforcement allowed Koty to have two days off during the week to take care of his child, and allowed his wife to work. (PSOF 19.) After a period of time in the court house, you lose your certification. (PSOF 40.) Illinois has a statute that states that a Court Security offices is less qualified than Law Enforcement. (55 ILCS 5/3-6012.1, Court security officers.) For example, the statute states among other things that , "however, such arrest powers shall be limited to performance of their official duties as court security officers." This is distinctly different than Law Enforcement. Clearly, being in the court house would eliminate Koty's opportunities to work on the streets elsewhere. A finder of fact could conclude that this was negative and part of the punishment. At least, there is a question as to whether the transfer to the court house was a punishment.

As a signal by the defendants that the assignment by Koty to court services was a punishment, they argue that it was temporary and therefore not a punishment. If the defendants' argument that temporary makes it ok, then permanent would be a punishment. While that is clearly not true that temporary is ok, the defendants make his assignment to Court Services a permanent one. (PSOF 15.) In the November 10, 2014 memorandum to Koty, it not only states that Koty's assignment is permanent, but it also states that his doctor restricted him from full duty. (Plaintiff's Exhibit B.) The doctor specifically stated that he is fit for full duty.

The response to Koty submitting to the employer his ILDHR/EEOC complaint should have been an SUV, or at least a discussion as to what can be done.

Prior to April 7, 2014, the Quartermaster tried to get Koty an SUV because of the medical problems he was having with his Crown Victoria. (PSOF 8.) The determination of who gets a vehicle, how they are assigned, is up to the Quartermaster with the Sheriff having the ultimate say. (PSOF 41 and 42.) Chief Kruse testified that a vehicle could be assigned to Koty if there was a need to. (PSOF 28.) The Quartermaster testified that he wanted to assign vehicles based on seniority, but he was not allowed. (PSOF 6.) So, when word got out that the Quartermaster was going to assign a SUV to Koty, the Sheriff told the Quartermaster that Koty cannot get an SUV. (PSOF 8.) End of the story for Koty.

Prior to April 7, 2014, Koty sat in a DuPage sheriff's SUV. (PSOF 17.) He felt no pain. (PSOF 17.) The seat to the pedals was at an angle that eliminated the pain on his disability. (PSOF 17.) Koty was communicating that he needed to straighten out his leg while driving, prior to April 7, 2014. (PSOF 17.)

The Crown Victoria's position of the seat to the pedals was causing great pain. (PSOF 17.) Therefore, his legs are straight from the front of the seat to the pedals. The SUV allows Koty to sit high above the pedals, and therefore his knee and hips do not have the same pressure.

The employer never communicated with Koty after the April 7 and 18th, 2014 communication concerning its failure to accommodate Koty. (PSOF 16.) Also, the employer never communicated after April 18, 2014 with any doctors concerning Koty's issue. (PSOF 16.) So, on April 18, 2014, the employer had no interest in determining the cause of Koty's disability/medical condition or how it can be resolved.

The employer was not reacting to Koty's doctor's note. The doctor's note stated that Koty cannot drive anything but an SUV. Defendants' tab 5. On April 7, 2014, at the beginning of his shift, the employer received this note. (PSOF 37.) Despite receiving the note, the defendants ordered Koty to continue driving his Crown Victoria. Koty Declaration. So, for his shift, he remained in the Crown Victoria.

Chief Kruse testified that in the meeting with Chief Angus, ASA Bruckner and himself, he was told that there was not a vehicle available for Koty. (PSOF 43.) Yet, the quartermaster had a vehicle for Koty, and wanted to give an SUV to Koty, if the Sheriff did not stop it. With the defendants' witnesses saying two different things, there is a material question of fact. The Sheriff stopping the Koty from getting the vehicle is proof enough that they had one, and chose to put Koty in the court house until he changes his tune.

The employer contacted an Assistant State's Attorney to determine how to punish Koty. DSOF 23. Yet, the employer is not sure when this meeting took place. DSOF 24. If this was an accommodation, the employer would have contacted the County's EEOC Officer, Margaret Ewing. (PSOF 26.) Yet, the Assistant State's Attorney made the recommendation. (DSOF 26.) The defendants' statement of facts is void of anyone from DuPage Human Resource that is knowledgeable on IDHR/EEOC issues involved in Koty's accommodation. The defendants' consistently argue disability elements in their motion such as reasonable accommodation, yet argue that there was no disability. If this was an accommodation for his disability, it would make no sense to contact the State's Attorney to make that decision. Defendants would have made the reasonable accommodation decision without having an attorney making the decision on what to do. This argument by the defendants supports that there was a disability and they were accommodating it, and that

they were making sure they had everything in place to punish Koty. The employer states that the only document they received April 7, 2014, from Koty was a April 4, 2014 doctor's note and the IDHR/EEOC complaint. The employer is required to submit documents that are in support of the non-movant. For example, the employer was silent about a submission from Koty's doctor on April 18, 2014. On April 18, 2014, Koty submitted a Medical Information Request Form, which states more specifically the accommodations for Koty. Tab 1. He needed a squad car with elevated seat and adequate leg room for good lumbar support. Tab 1. The doctor also stated that the advanced ADLs are limited by leg room in current squad car related to driving. Tab 1.

The DuPage County's Risk Manager admitted at his deposition that the Sheriff's SUV have more leg room than Koty's Crown Victoria. Therefore, allowing Koty to use an SUV would eliminate the pain. (PSOF 23.)

The county's risk manager's, Patrick Genovese, measurements are nothing more than a red herring. Yet, the risk manager opined at his deposition that the SUV had more leg room than the Crown Victoria. (PSOF 24.) The risk manager had never dealt with the ergonomics of a car. (PSOF 20.) The risk manager never saw the doctor's note at the time he was measuring the two cars. (PSOF 24.) If he saw the doctor's note, he would have made measurements that were meaningful. (PSOF 25.) He is not certified in ergonomics. (PSOF 19.) The risk manager had no idea what he was measuring for and did not know why he was measuring. (PSOF 25.) He never was asked by the Sheriff for an opinion, and he never did give an opinion. (PSOF 22.) He simply measured things without direction. Could Koty get an SUV to eliminate his pain? Yes and no. The Quartermaster had SUVs to assign to Koty, or could assign an SUV to Koty. So, in a matter of seconds after Koty submitted his IDHR/EEOC complaint, he could have been in an SUV. However, the Sheriff ordered the Quartermaster to not assign one to

Koty. This action by the Sheriff is part and parcel of the retaliation. Eventually, after Koty was taught a lesson, he was assigned an SUV.

ADDITIONAL RETALIATION

Koty's loss included being removed from Special Operations two days after submitting his IDHR/EEOC complaint. While he could have remained on Special Operations, the Sheriff punished him more by removing him from Special Operations on April 9, 2014. (PSOF 38.) As can be seen from the April 9, 2014 letter, there is no explanation of why he was removed from Special Operations and how he can return. (Plaintiff's exhibit D.) After the fact, the defendants argue that Koty's personal car prevents him from being on Special Operations, when others similarly situated did not have to do anything different. (PSOF 45.) Later when Koty continues to complain about being taken off of Special Operations, the defendants require him to submit an explanation on how he is to store his Special Operations gear and weapons in his personal vehicle. (PSOF 45.) This is not supported by any policy or procedures of the Sheriff. (PSOF 35.) The defendants do not proffer a single fact to support that requiring similarly situated employees to submit a plan.

In general, an officer on Special Operations is summoned to an incident. The officer may be home or doing grocery shopping. The officer has to take their personal vehicle with their Special Operations gear and weapons in their personal vehicle. Koty was treated different than others on Special Operations. For example, the Special Operations is also made up of police officers from towns and Deputy Sheriffs which drive their own personal vehicles with no special modifications for Special Operations. (PSOF 30.) On top of the DuPage Sheriffs that had the same type of unsecured vehicle as Koty, there were police officers from other towns that supplied their own personal vehicles exactly like Koty's. Koty Declaration. (PSOF 30.) A police officer from a town would be driving and using her own vehicle to go to a Special Operations call. This is

what the Sheriff is arguing Koty cannot do, drive his own vehicle. The Sheriff has no explanation why Koty was removed from Special Operations two days after submitting his IDHR/EEOC complaint.

While the buckets of direct and indirect method have been abolished in the Seventh Circuit, it is proof of retaliation when Koty can show that others were treated more favorably. *Tomanovich v. City Of Indianapolis*, 457 F.3d 656, 666 (7th Cir. 2006). He can also show that there was a materially adverse action by defendants. *Hoppe V. Lewis Univ.*, 692 F.3d 833, 841 (7th Cir. 2012).

The Sheriff admits that they have no policy on what car a law enforcement officer can use to carry their Special Operations gear. (PSOF 35.) As stated above, town officers also on Special Operations can use their own personal car to carry their Special Operations gear and weapons. However, Koty was treated different. The only difference between Koty and the other police officers was that Koty submitted an IDHR/EEOC complaint to the Sheriff. The Sheriff ordered Koty to come up with a procedure to use his car to carry his Special Operations gear to drive to and from work in order to keep him in Court Services as long as possible. There were no standards that the employer could use or that Koty could refer to for carrying his Special Operations gear. It was all made up for defendants to continue punishing Koty. Defendants do not cite to one piece of policy or otherwise, for this requirement, because there are none.

After a period of time, Koty realized that the Sheriff was determined to keep Koty in the Court Services until Koty became submissive. (PSOF 31.) So, he was forced to undergo surgery to see if his pain could be eliminated. (PSOF 31.) After surgery, his doctor allowed him to try and work in the Crown Victoria with no restrictions. (PSOF 36.) Despite Koty having a note from the doctor that he can work in the Crown Victoria the defendants refused to allow him to go back to

Law Enforcement. Koty had to go through additional hoops to get back to his job. He was required to file other forms to get back to his job, or remain in Court Services. (PSOF 36.)

The defendants did not stop punishing once Koty had the surgery. Koty was a union employee. (PSOF 33.) He had bid and won the right to work days in Law Enforcement for 2015. (PSOF 39.) After being allowed to leave Court Services in 2015, the Sheriff put him back to Law Enforcement, but on nights. Nights is not what Koty bid for and won. Once Koty had bid for day shift, he is locked into that shift for a year. (PSOF 33.) Koty filed a grievance, and was immediately moved to day shifts. (PSOF 39.) It is clear that the motivation was punishment, because the timing of moving him to nights, and then days right after he filed a grievance is not coincidental.

Afterward Koty filed his lawsuit in Federal Court, the defendants started assigning SUVs not based on politics, but on seniority. Koty was very senior. Because of Koty's lawsuit, all deputies are now assigned SUVs not based on who you know, but solely on seniority.

Finally, Defendants failed to engage in an interactive process. There is no facts submitted by Defendants of an interactive process. Plaintiff did not have a conversation with the employer on anything related to his accommodations. (PSOF 16.) They made no attempt to discuss with Koty what could be worked out for him. (PSOF 16.) "[T]he ADA requires employers to engage in an interactive process with disabled employees needing accommodation so that together they can identify the employee's needs and discuss accommodation options.")." *Ammons v. Aramark Uniform Services, Inc*, 368 F.3d 809, 819 (7th Cir. 2004) "Rather, the employee must further show that the breakdown of the interactive process led to the employer's failure to provide a reasonable accommodation. *See id.* at 1016." *Emerson v. Northern States Power Co*, 256 F.3d 506, 515 (7th Cir. 2001). In a perfect world, had the employer spent a moment with Koty to determine that he needed to have his legs bent a little while driving, they would have understood why a

SUV with its higher seat from the floor would have eliminated the pain he was suffering. Yet, the employer was interested in punishing Koty so that they do not hear any more complaints from him.

Wherefore, the defendants' argue a non-existent law of direct and indirect evidence, there is a material question of fact as to why Eric Koty was moved to Court Services the day after submitting an ADAAA complaint, removed from Special Operations two days later, allowed to come back to special operations, but only if he does something no one else has to do, allowed to come back to Law Enforcement, but only if he works night shifts until he files a grievance, Eric Koty prays that this Court will deny the defendants' Motion For Summary Judgment and set the matter for further proceedings.

Sincerely submitted,

/s/ Jeffrey M. Jacobson
Jeffrey M. Jacobson
430 W. Roosevelt
Wheaton, IL 60187
331-222-9529
6205762